**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Progressive Universal Insurance Co., | Civil No. 13-2863 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Donald John, Don John Construction, Erik Pavlicek, Ronald Fischer, and Jonathan Kent, | |
| Defendants. | |

_____

Beth A. Jenson Prouty, Esq., and Stephen M. Warner, Esq., Arthur, Chapman, Kettering, Smetak & Pikala, P.A., counsel for Plaintiff Progressive Universal Insurance Company.

Brian A. Wood, Esq., Lind Jensen Sullivan & Peterson, P.A., counsel for Defendants Don John Construction and Donald John.

James S. Ballentine, Esq., and Mark H. Gruesner, Esq., Schwebel Goetz & Sieben, P.A., counsel for Defendant Ronald Fischer.

_____

**INTRODUCTION**

This matter is before the Court on Plaintiff Progressive Universal Insurance Company's ("Progressive") Motion for Summary Judgment. (Doc. No. 34.) For the reasons set forth below, the Court grants Progressive's motion.

# BACKGROUND

## I.  Factual Background

### A.  The Accident

On the evening of August 26, 2012, Defendant Erik Pavlicek ("Pavlicek") was loading tools onto a 2004 Ford pickup truck owned by Defendant Donald John ("John") at John's residence in Stacy, Minnesota, in preparation for a construction job that was to take place the next day.  (Doc. No. 42 ("Prouty Aff.") ¶ 3, Ex. 1 at 79; Prouty Aff. ¶ 3, Ex. 5 at 96-97.)  At approximately 7:00 p.m., John told Pavlicek that he was leaving to go to a casino with his wife and asked Pavlicek not to drive any of his vehicles while he was gone.  (Prouty Aff. ¶ 3, Ex. 7 at 98-100.)  John told Pavlicek not to drive his vehicles because he knew that Pavlicek had used several of his vehicles on previous occasions without his permission.  (*Id.* at 99-101.)  John left the keys in all of his vehicles.  (*Id.* at 100.)

After John and his wife left, Pavlicek drove the pickup truck to Smitty's Bar in Chisago City, Minnesota, to show it off to patrons.  (Prouty Aff. ¶ 3, Ex. 1 at 73, 79.)  At Smitty's Bar, Pavlicek met Ronald Fischer ("Fischer") and Jonathan Kent ("Kent") and asked them if they wanted to go for a ride in the pickup truck, which Pavlicek claimed was his.  (*Id.* at 73.)  Pavlicek, Fischer, and Kent drove to Al's Bar in Center City, Minnesota, where they each consumed four to five Long Island iced teas before driving to Osceola, Wisconsin.  (*Id.*)

At approximately 1:30 a.m. on August 27, 2012, the pickup truck was involved in a single-vehicle rollover accident near Osceola.  (Prouty Aff. ¶ 3, Ex. 4 at 69.)  At the

time of the accident, Pavlicek was driving the pickup truck, Kent was sitting in the front passenger seat, and Fischer was asleep in the backseat.[1] (*Id.*; Prouty Aff. ¶ 3, Ex. 1 at 79.) When the police arrived at the scene of the accident, Pavlicek and Kent were attempting to pull Fischer out of the overturned pickup truck. (*Id.*) As a result of the accident, Fischer sustained serious injuries. (Prouty Aff. ¶ 3, Ex. 4 at 69-70.)

Following the accident, Osceola Police Officer Andrew Bach collected statements from all parties. (*See* Prouty Aff., Ex. 1 at 79.) Based on these statements, Officer Bach determined in his incident report that Pavlicek took the pickup truck from John's residence without John's permission. (*Id.*) Officer Bach's report was supplemented by a motor vehicle theft report from the Isanti County Sheriff's Office, which listed Pavlicek as the suspect. (Prouty Aff. ¶ 3, Ex. 5 at 87.) The State of Wisconsin charged Pavlicek with a felony under Wisconsin Statute Section 943.23(2), which makes it a crime to "intentionally take[] and drive[] any vehicle without the consent of the owner." (Prouty Aff. ¶ 3, Ex. 6 at 1.)

B.     **The Policy**

At the time of the accident, the pickup truck was insured under a Commercial Auto Policy ("Policy") issued by Progressive to John and Don John Construction. (Prouty Aff. ¶ 3, Ex. 2 at 1-3.) The Policy requires Progressive to "pay damages . . . for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto." (*Id.* at 12.)

---

[1]     Although Progressive indicates that there may be some basis to suggest that Kent was driving the pickup truck at the time of the accident, the police report concludes that Pavlicek was the driver, which no party disputes. (Prouty Aff. ¶ 3, Ex. 1 at 79.)

3

The Policy defines "an insured" to mean the named insured—John and Don John Construction—and, among others, "[a]ny person while using, with your permission, and within the scope of that permission, an insured auto you own[.]" (*Id.* at 6.) The term "insured auto" is defined to include "[a]ny auto specifically described on the declarations page." (*Id.*) The 2004 Ford pickup truck is specifically listed in the declarations page. (*Id.* at 1.)

After the accident, Fischer sought coverage for injuries sustained in the accident under the Policy. (Doc. No. 1 at 3.) Progressive denied coverage to Fischer after determining that Pavlicek was not an insured under the Policy because he was not using the insured vehicle with John's permission. (*Id.* at 3-4.)

## II.   Procedural Background

On October 17, 2013, Progressive commenced this declaratory judgment action in federal court, seeking "a declaration that it does not have any obligation to make any defense or indemnity payments under the Progressive policy for the acts or injuries related to the August 27, 2012 accident." (Doc. No. 1 at 5.) Progressive named John, Don John Construction, Fischer, Pavlicek, and Kent as defendants in the case. (*Id.* at 1-2.) John and Don John Construction were joined in the case solely for the purpose of binding them to the Court's judgment. (Doc. No. 4 at 1-2.) On June 10, 2014, the Court entered a default judgment against Pavlicek and Kent. (Doc. Nos. 39, 40.)

Progressive now moves for summary judgment on the issue of whether Pavlicek's use of John's pickup truck at the time of the accident is covered under the Policy. (Doc. No. 34.) Progressive argues that there is no coverage for the following three reasons:

4

(1) Pavlicek is not an "insured" covered under the Policy because he did not have permission to use John's pickup truck; (2) John is not vicariously liable for Pavlicek's use of his pickup truck; and (3) John is not independently negligent for Pavlicek's use of his pickup truck after John left his keys in his vehicle. (Doc. No. 45 at 1.) Defendant Fischer asks the Court to deny Progressive's motion in its entirety. (Doc. No. 43.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Progressive's Motion for Summary Judgment

### A. Policy Coverage

Progressive first argues that, based on the Policy language and the undisputed facts, the Policy does not provide liability coverage to Pavlicek[2] for his use of the pickup truck on the night of the accident. (Doc. No. 41 at 9-14.) Specifically, Progressive contends that Pavlicek is not an "insured" under the Policy because he did not have permission to drive the pickup truck. (*Id.* at 11.) Fischer does not expressly dispute this claim, but maintains that Pavlicek had implied permission to operate the pickup truck. (*See generally* Doc. No. 43.) To the extent that Fischer argues that Pavlicek had permission to operate the truck, the Court addresses whether the Policy issued to John and Don John Construction extends coverage to Pavlicek as an "insured" under the Policy.

Under Minnesota law,[3] when insurance policy language is clear and unambiguous, the language must be given its usual and accepted meaning. *See Wanzek Constr., Inc. v.*

---

[2] The parties do not dispute that Pavlicek, not Kent, was the driver of the pickup truck at the time of the accident. Should there be any basis to conclude otherwise, such a finding is inconsequential to the Court's determination of whether Pavlicek is covered as an "insured" under the Policy. Additionally, in the event of such a finding, the Court determines that there is no evidence before the Court to support a determination that Kent is covered as an "insured" under the Policy.

[3] It is undisputed that Minnesota law applies to determine whether Pavlicek's use of the pickup truck is covered under the Policy. In this diversity case, the interpretation of Minnesota-issued insurance policies is a matter of Minnesota law. *See Murray v.*

*Emp'rs Ins. of Wausau*, 679 N.W.2d 322, 324 (Minn. 2004). The parties do not dispute that the relevant Policy terms are unambiguous. Accordingly, the Court will interpret the terms according to their usual and accepted meaning.

As noted previously, John and Don John Construction are both named as insureds under the Policy, and the Policy obligates Progressive to "pay damages . . . for which an insured becomes legally responsible because of an accident[.]" (Prouty Aff. ¶ 3, Ex. 2 at 12.) Also, the Policy defines "insured" to mean anyone "using, with your permission, and within the scope of that permission, an insured auto you own"; "an insured auto you own" is defined to include the pickup truck driven by Pavlicek at the time of the accident. (*Id.* at 6.) The Policy does not, however, define the term "permission."

Minnesota courts assess permission by looking to either express or implied permission. *See generally Stewart v. Anderson*, 246 N.W.2d 576, 578 (Minn. 1976). To be express, permission must be directly and clearly stated, and not merely left to inference. *See Jones v. Fleischhacker*, 325 N.W.2d 633, 635 (Minn. 1982). In contrast, "implied permission" does not need to be directly stated, and may be left to implication, inference, or assumption. *See Stewart*, 246 N.W.2d at 578.

Here, applying the above definition, the Court must determine whether the record, construed in the light most favorable to Fischer, demonstrates that "permission" was granted to Pavlicek. First, the record shows that John knew that Pavlicek had used his vehicles on previous occasions without his permission. However, it is undisputed that,

---

*Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008). Additionally, the interpretation of the language of an insurance contract is usually a question of law for the Court. *Id.*

7

upon learning that Pavlicek had used his vehicles during the night on two or three prior occasions, John instructed Pavlicek not to drive his vehicles after each incident. Additionally, the facts show that John kept his unlocked vehicles on his private farm property, which is a quarter mile off the road in a rural town. Moreover, it is undisputed that both John and his wife expressly told Pavlicek not to drive any of their vehicles on the evening of the accident and that neither John nor his wife were present when Pavlicek took the pickup truck, nor saw Pavlicek drive the pickup truck on the evening of the accident. Finally, Fischer has offered no evidence to support his claim that Pavlicek had permission to operate the truck. Even in the light most favorable to Fischer, these undisputed facts clearly demonstrate that Pavlicek lacked both express and implied permission to use John's pickup truck on the night of the accident.

There being no genuine dispute as to any material facts, the Court must determine whether, as a matter of law, Pavlicek's use of the pickup truck on the night of the accident is covered under the Policy. The Court finds that the plain language of the Policy does not confer coverage to Pavlicek for the accident. Consequently, Progressive's obligation under the Policy does not extend to those other than the named insureds since Pavlicek did not use the vehicle with permission.

### B.   Vicarious Liability

Progressive also argues that it is entitled to summary judgment because John is not vicariously liable under Minnesota law for Pavlicek's use of his vehicle at the time of the accident. (Doc. No. 41 at 13-14.) Specifically, Progressive contends that, as a matter of law, John is not vicariously liable under the Minnesota Safety Responsibility Act, which

8

governs the responsibilities of an automobile owner for damage caused by a driver. (*Id.*) Fischer argues that, although the Minnesota statute may not apply to create vicarious liability, Section 344.33(2) of the Wisconsin Financial Responsibility Act triggers John's vicarious liability. (Doc. No. 43 at 3, 11.)

Because the parties appear to dispute whether Minnesota or Wisconsin statutory law governs this claim, the Court must conduct a choice-of-law analysis to determine whether Minnesota or Wisconsin law should govern this issue. In a diversity case, the Court must apply the forum state's choice of law rules. *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005). Applying Minnesota's choice of law rules, the first inquiry is whether an actual conflict of law exists. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins.*, 604 N.W.2d 91, 93-94 (Minn. 2000). A conflict exists if application of the law of either state would be outcome determinative. *Id.* at 94. When there is no conflict between the laws, the law of the forum state applies. *Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 723 (Minn. App. 1987).

An analysis of the statutory law in Minnesota and Wisconsin demonstrates that no conflict exists. Both Minnesota and Wisconsin law allows vehicle owners to be vicariously liable for damages when a permissive user of the vehicle is involved in an accident. *See* Minn. Stat. § 169.09, subd. 5a (2012); Wis. Stat. § 344.33(2) (2012). Additionally, an application of the law of either state would not be outcome determinative because no vicarious liability exists under either state statute.

As to the Minnesota Safety Responsibility Act, the statute provides: "Whenever any motor vehicle shall be operated *within this state*, by any person other than the owner,

with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof." Minn. Stat. § 169.09, subd. 5a (emphasis added).  Because the accident occurred in Wisconsin, the Court finds, and the parties agree, that the Minnesota statute does not apply to make John vicariously liable.  *See, e.g.*, *Boatwright v. Budak*, 625 N.W.2d 483, 488 (Minn. App. 2001) (holding that the statute applies only to accidents that occur within Minnesota); *Avis Rent-A-Car Sys. v. Vang*, 123 F. Supp. 2d 504, 507-08 (D. Minn. 2000) (concluding that the Minnesota statute did not apply to an accident that occurred in Michigan, "even when the vehicle was operated within Minnesota at some point in the trip").  Therefore, the Court determines that John is not vicariously liable under the Minnesota Safety Responsibility Act.

As to the Wisconsin Financial Responsibility Act, the statute provides:  "A motor vehicle policy of liability insurance . . . shall insure any motor vehicle owned by the named insured and any person using such motor vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the . . . use of the motor vehicle within the United States of America."  Wis. Stat. § 344.33(2).  The Court has previously determined that Pavlicek used John's pickup truck without John's implied or express permission.  Therefore, the Court concludes that John is not vicariously liable under Section 344.33(2) of the Wisconsin Financial Responsibility Act.

Because application of the law of either state would not be outcome determinative, the law of the forum state applies.  Applying Minnesota law, the Court determines that, as

a matter of law, John is not vicariously liable under the statute for Pavlicek's use of his vehicle at the time of the accident because the accident did not occur within Minnesota.

### C.     Negligence

Finally, Progressive argues that John is not independently negligent for Pavlicek's use of his pickup truck after John left his keys in the vehicle.  (Doc. No. 45 at 9.)  Fischer disagrees, relying on the "special circumstances" exception to the general rule that vehicle owners who leave their keys in unattended vehicles are not liable for injuries caused by a thief's subsequent negligent operation of the vehicle, to conclude that "special circumstances" exist in this case.  (Doc. No. 43 at 7-8 (citing *State Farm Mut. Auto. Ins. Co. v. Grain Belt Breweries, Inc.*, 245 N.W.2d 186 (Minn. 1976)).)  Specifically, Fischer contends that John's act of leaving keys in his unlocked, unattended vehicles constitutes special circumstances such that a reasonable jury could find that John's negligence directly caused Fischer's injuries.  (*Id.* at 8.)

The record reflects no evidence that special circumstances exist in this case.  Unlike the truck driver in *Grain Belt* who left keys in his truck parked in a location where it might be expected that minors or drunkards might tamper with the vehicle and lack the capacity to operate it safely, in this case, John kept his vehicles on his secluded private farm property.  *Grain Belt*, 245 N.W.2d at 188-89.  Additionally, whereas the truck driver in *Grain Belt* did not deliver an express instruction not to use the vehicle, in the present case, both John and his wife expressly instructed Fischer not to drive any of their vehicles.  *Id.* at 189.  Thus, the special circumstances contemplated in *Grain Belt* do not exist here.  Consequently, the Court determines, as a matter of law, that there is no

evidence of special circumstances that would create a fact question on the issue of John's negligence.

## CONCLUSION

Because the Court has determined that: (1) Pavlicek is not an "insured" covered under the Policy because he did not have permission to use John's pickup truck; (2) John is not vicariously liable for Pavlicek's use of his vehicle; and (3) John is not independently negligent for Pavlicek's use of his pickup truck after John left his keys in his vehicle, the Court finds, as a matter of law, that there is no coverage under the Policy for Pavlicek's use of John's pickup truck. Therefore, the Court grants Progressive's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Progressive's Motion for Summary Judgment (Doc. No. [34]) is **GRANTED** and the Court hereby declares that there is no coverage under the Policy for Pavlicek's use of John's pickup truck at the time of the accident.

Dated:  September 18, 2014s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge